*1395 OPINION.
Sieekin:
The principal question presented is the value of the contract for the services and the use of the name of Charles P. Limbert acquired by petitioner in 1911 in return for $45,000 par value of its stock and $25,000 in cash. The petitioner contends that the value of this contract should be allowed as invested capital.
Section 301 of the Revenue Act of 1918 provides for an excess-profits tax, based upon the relation of the net income to the invested capital.
Sections 311 and 312 allow credits based upon the invested capital.
Section 326 provides:
(a) That as used in this title the term “invested capital” for any year means * * * :
[[Image here]]
*1396 (4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.
Section 32o states:
The term “ int angible property ” means patents, copyrights, secret processes and formulae, good will, trade-marks, trade-brands, franchises, and other Ulco property;
The term “ tangible property ” means stocks, bonds, notes, and other evidences of indebtedness, bills arid accounts receivable, leaseholds, and other property other than intangible property. (Italics supplied.)
The Revenue Act of 1921 has similar provisions.
It will be noted that each of these acts includes in “invested capital ” certain specified intangible properties, such as patents, copyrights, secret processes and formulae, good will, trade-marks, trade-brands and franchises, and other like property.
The question arises then as to what property may be included as invested capital under these general terms. A perusal of the legislative history fails to disclose any amplification upon the subject, the discussion being confined more or less to the manner of determining the value of intangibles.
Contracts, generally speaking, are of an intangible nature, and are often quite valuable. It would seem that the intention of Congress was to allow as invested capital any valuable tangible or intangible property which was bona fide acquired for stock or shares, subject to certain limitations as to value allowed/
We have heretofore held that contracts may be included in invested capital.
In Appeal of Dwight & Lloyd Sintering Co., 1 B. T. A. 179, we held that license agreements authorizing the licensees to make and use certain patented machines for refining ores, acquired for stock by a corporation, are intangible property for invested capital purposes and as such are subject to the limitations on intangibles contained in the Revenue Act of 1917.
In Appeal of Tonawanda Power Co., 3 B. T. A. 1195, a contract to furnish electric energy to be produced in the future, acquired by the issue of stock, was held to be intangible property where the taxpayer had the right, but only in case of breach of contract, to the use of the tangible property — generators and other machinery. The value of the contract was allowed as invested capital subject to the statutory limitation on intangibles.
*1397 We have also held that money paid, in addition to regular salaries, to secure services, may he included in invested capital. In the Appeal of Federal Plate Glass Co., 6 B. T. A. 851, we stated:
The petitioner also contends that the amount of $100,000 which it paid to its general manager and plant superintendent in addition to stated salaries shall be included in its statutory invested capital. To sustain its contention on this point it asserts that these men performed services in the completion of its manufacturing plant analogous to the duties and functions of designing and supervising architects or engineers, and that the result of such services is reflected in its capital assets. * * * It was largely through their supervision and direction that the plant was made ready for production. To secure the services of these men for the purposes here indicated, the petitioner paid each of them the amount of $50,000, which was in addition to remuneration for services connected with the operation of the enterprise. We are of the opinion that these payments were capital expenditures and should be included in the computation of the petitioner’s invested capital for profits-tax purposes in each of the taxable years.
In the decision of the case of La Belle Iron Works v. United States, 250 U. S. 377, Mr. Justice Pitney of the Supremo Court of the United States defines the words “ to invest ” as follows:
When speaking of the capital of a business corporation or partnership, such as the act deals with, “ to invest ” imports a laying out of money, or money’s worth, either by an individual in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business; in either case involving a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains.
In this proceeding we must decide whether a contract for which the petitioner paid $25,000 cash and issued $45,000 par value of stock in the year 1911 should be included as invested capital. It is shown that up to the time of the acquisition of the contract the success of the business was due to the personality, ability, and energy of Limbert, and had Limbert changed the name of the company and left the business, as he had an unquestioned right to do, petitioner would have had to begin over again. The contract in question was entered into between Limbert and petitioner, and Limbert gave the petitioner the permanent right to use his name in its corporate title and in or in connection with its trade-marks, and agreed that he would not give the right to use his name in the same manner to any other concern, nor would he give his services or any part thereof to any competing business. He further agreed to manage the business of petitioner for a period of 10 years.
A part of the consideration given by Limbert was of a permanent nature and part was for his services for a period of years.
It is not necessary to determine whether the contract was intangible or tangible property, since the amount claimed is less than *1398 the maximum for intangibles as invested capital as provided by section 326 (a) (4) of the Revenue Acts of 1918 and 1921, but we find that this contract had a value of $70,000, and since the asset is of a permanent nature and was bona fide obtained for cash and shares of stock in petitioner’s business, it should be included as invested capital for that amount for each of the years in controversy.
We are, however, unable to see that the contract value may be recovered by exhaustion deductions as claimed by petitioner. The contract granted petitioner the permanent exclusive right to use Limbert’s name. This feature of the contract was not, in any sense, an expiring asset, and therefore, in so far as the contract derived value from this provision, it is not depreciable. No attempt to allocate the total value between the two features of the contract has been made. Accordingly, the deductions claimed therefor must bo denied.
The claim for special assessment being made in the alternative need not be considered in view of our valuation of the contract.
From our findings of fact it appears that more than five years elapsed between the filing of the return for the year 1919 and the mailing of the deficiency notice and that the proposed deficiency is barred by the statute of limitations. George A. Brown, et al., 6 B. T. A. 895.
Reviewed by the Board.
Judgment will be entered on 15 days’ notice, under Rule 50.